The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commission Bost and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with modifications concerning medical treatment and maximum medical improvement.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter of this case.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Insurance Company of the State of Pennsylvania is the carrier on the risk.
4. Plaintiff suffered an admittedly compensable injury by accident arising out of and in the course and scope of her employment on or about 12 October 1996.
5. Plaintiff's average weekly wage is $314.75.
6. Plaintiff last worked for defendant-employer on or about 28 August 1998, has not returned to work for defendant-employer since that time and has not received any compensation benefits since that time.
7. The parties mediated this case on 27 October 1998. Pursuant to Commission order, defendants advanced plaintiff's share of the mediator's fee in the amount of $150.00.
8. Defendants paid plaintiff compensation for total disability at the rate of $200.00 per week from 14 October 1996 through 8 August 1997. Defendants paid plaintiff compensation for partial disability under N.C. Gen. Stat. § 97-30 from 7 August 1997 through 10 August 1997 in the amount of $57.14. From 20 August 1997 through 29 August 1997, defendants paid plaintiff compensation in the amount of $227.13.
9. The following documents were received into evidence as stipulated exhibits:
(1) medical and rehabilitation records, 223 pages;
(2) letter from Mr. Brantley to Mr. Austin dated 18 December 1998;
(3) letter from Mr. Austin to Mr. Brantley dated 10 March, 1999;
(4) Form 28 dated 30 January 1998;
 (5) Undated letter from Jake Miller to Shirley Parker with handwritten note from Ms. Miller at bottom of letter;
 (6) Defendants' Responses to Plaintiff's Interrogatories and Request for Production of Documents dated 21 April 1999 with Exhibits A B attached thereto;
(7) Medical records from Dr. Robert Abraham, 2 pages;
(8) Medical records from Subu Dubey, 3 pages;
(9) Record of Discussions with Associates;
(10) Medical record from Dr. Mark Hennessy dated 9 December 1997;
(11) Form 60 dated 4 November 1996; and
(12) Medical records from Dr. Mark Rodger, 4 pages.
10. Following the hearing before the Deputy Commissioner, the parties deposed Dr. Subu Dubey, Dr. Robert Abraham and Dr. Mark Rodger and the depositions are a part of the evidentiary record in this matter. In addition, counsel for defendants submitted four pages of stipulated medical records by letter dated 20 September 2000.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. On 12 October 1996, plaintiff was working as a stocker in the Wal-Mart Store in Jacksonville, North Carolina when she strained her low back while lifting furniture. Thereafter, plaintiff was out of work until August of 1997, during which time she received compensation for total disability. When plaintiff did return to work, she was assigned to be a fitting room attendant, where her primary responsibility was to answer telephones.
2. Plaintiff was initially evaluated at Onslow Doctors Care on 14 and 16 October 1996. She was then referred to Dr. Noel Rogers, an orthopedic surgeon in Jacksonville, who first saw her on 16 October 1996. Dr. Rogers treated plaintiff for her back through 22 November 1996, at which time he referred plaintiff for evaluation by Dr. Robert Abraham, a neurosurgeon in Jacksonville.
3. Dr. Abraham saw plaintiff on four occasions beginning 3 December 1996. After reviewing an MRI obtained by Dr. Rogers and a lumbar mylegram/CT scan that he ordered, Dr. Abraham referred plaintiff to Dr. Scott Johnston, a pain management specialist in Jacksonville and directed plaintiff to return in 4 6 weeks or as needed.
4. Plaintiff first saw Dr. Johnston on 24 February 1997 and has continued seeing Dr. Johnston, intermittently, since that time
5. Defendant-carrier requested that plaintiff be evaluated by Dr. Mark Rodger, an orthopedic surgeon in Wilmington. Dr. Rodger first saw plaintiff on 14 May 1997. At the recommendation of the medical case manager, both defendant-carrier and plaintiff agreed for Dr. Rodger to become the treating physician. Thereafter, plaintiff followed up with Dr. Rodger on 12 June 1997, 28 October 1997 and 4 February 1998.
6. Plaintiff returned to work for defendant-employer as a fitting-room attendant in August of 1997. While plaintiff was working in this capacity, there were at least two other women who performed the same job duties that plaintiff performed as a fitting-room attendant. Therefore, plaintiff had to divide her duties with the other women. other stores operated by defendant-employer have individuals who hold fitting-room attendant positions as well.
7. The fitting-room attendant job plaintiff performed for defendant-employer was not created for her but represented a job defendant-employer had available for plaintiff which was suitable to her capacity. In her position as a fitting-room attendant, plaintiff had the capacity to earn wages of at least $314.75 per week.
8. Even though plaintiff had agreed for Dr. Rodger to become the treating physician, she consulted Dr. Abraham without referral or authorization on 20 July 1998 for complaints of increased back pain. Four days later on 24 July 1998, Dr. Abraham performed a percutaneous discectomy at L3-4 in an effort to repair a bulging disc at that level.
9. Plaintiff received treatment by Dr. Dresbach, a psychiatrist, and Dr. David Novak, a psychologist. Dr. Novak diagnosed plaintiff with chronic pain disorder. According to plaintiff, water therapy was most beneficial in improving pain symptoms. Plaintiff also used a TENS unit which helped to alleviate some of her chronic low back pain.
10. Dr. Rodger would not have recommended that plaintiff undergo the percutaneous discectomy that Dr. Abraham performed for two reasons. First, a May 1998 MRI did not reveal the need for a diskectomy. In addition, percutaneous discectomies are disfavored and do not achieve long-term results in that they tend to treat symptoms, as opposed to the cause of pain. As expected by Dr. Rodger, plaintiff only had a temporary improvement in her symptoms following surgery.
11. Plaintiff last worked at Wal-Mart on or about 28 August 1998. Since that time, plaintiff has retained the capacity to perform activities including standing for a period of up to 15 minutes, walking of a quarter mile and lifting 20 pounds, provided that she avoids bending, twisting, climbing and reaching above her shoulders.
12. Dr. Abraham has not released plaintiff to return to work.
13. At the hearing before the Deputy Commissioner on 30 November 1999, plaintiff agreed to return to Dr. Rodger for additional evaluation of her condition. It was not until 17 July 2000 that plaintiff actually did return to Dr. Rodger.
14. Following his evaluation of plaintiff, Dr. Rodger indicated that plaintiff is not currently a surgical candidate but did state that he is willing to manage plaintiff's ongoing treatment. Currently, Dr. Rodger's only recommendation is that plaintiff continue her pain management treatment with Dr. Johnston. This is the same course of treatment into which Dr. Abraham referred plaintiff in 1997 before her surgery.
15. The only additional recommendations for treatment that Dr. Abraham has offered are to obtain (1) a CT scan of plaintiff's head and (2) nerve conduction studies and electromyography of plaintiff's lower extremities. However, plaintiff concedes that the CT scan of the head is not related to the injury by accident.
16. Dr. Abraham rated plaintiff with a fifteen percent permanent partial impairment to the back and Dr. Rodgers rated her with a ten percent permanent partial impairment to the back.
17. plaintiff has a twelve and one-half percent permanent partial impairment to the back as a result of her injury at work on 12 October 1996.
18. By letter dated 20 September 2000, defendants' attorney advised that defendants agree to issue payment to plaintiff at the rate of $9.83 per week for the periods of time reflected in paragraph 15 of the pre-trial agreement which include from 14 October 1996 through 8 August 1997, from 9 August 1997 through 10 August 1997 and from 20 August 1997 through 29 August 1997 in order to compensate plaintiff for the difference between the original compensation rate and the compensation rate supported by the stipulated average weekly wage of $314.75.
19. Plaintiff wishes to return to Dr. Abraham.
20. Although plaintiff has received permanent partial disability ratings, she is not currently at maximum medical improvement according to the greater weight of the evidence including plaintiff's need for additional treatment for pain.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of defendant-employer on 12 October 1996. N.C. Gen. Stat. § 97 2(6).
2. On 12 October 1996, plaintiff's average weekly wages were $314.75. However, since plaintiff was originally paid benefits based upon an inaccurate average weekly wage of $300.00, plaintiff is entitled to compensation at the rate of $9.83 per week during those weeks for which plaintiff has already been paid compensation. N.C. Gen. Stat. § 97-29,97-30.
3. Plaintiff is entitled to authorization to change treating physicians to Dr Abraham. N.C. Gen. Stat. § 97-25.
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to payment of expenses for reasonably necessary medical treatment relating to plaintiff's compensable injury of 12 October 1996 for so long as such treatment tends to effect a cure, provide relief, or lessen the period of plaintiff's disability including the water therapy treatment which is beneficial in treating plaintiff's pain. Specifically, plaintiff is entitled to payment of any medical expenses plaintiff incurred with or at the direction of Dr. Abraham on or after 20 July 1998, including the percutaneous discectomy performed by Dr. Abraham on 24 July 1998 and the nerve conduction studies and electromyography of plaintiff's lower extremities, which were also recommended by Dr. Abraham. However, plaintiff is not entitled to payment for the unrelated CT scan of her head. N.C. Gen. Stat. § 97-25.
5. Plaintiff has been disabled since she last worked for defendant-employer and plaintiff has not yet reached maximum medical improvement. N.C. Gen. Stat. § 97-29; § 97-31.
6. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $209.83 per week from 28 August 1998 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $9.83 per week for the periods reflected in Finding of Fact #18 which include from 14 October 1996 through 8 August 1997, from 9 August 1997 through 10 August 1997 and from 20 August 1997 through 29 August 1997 in order to adjust plaintiff's compensation rate in light of the stipulation of the correct figure for plaintiff's average weekly wage.
2. Subject to a reasonable attorney's fee, defendants shall pay temporary total disability compensation to plaintiff at the rate of $209.83 per week from 28 August 1998 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. All accrued compensation shall be paid in a lump sum, subject to a reasonable attorney's fee.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel and thereafter by every fourth check.
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall pay all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of 12 October 1996, including the treatment she incurred with or at the direction of Dr. Abraham on or after 20 July 1998, including the percutaneous discectomy of 24 July 1998, and the nerve conduction studies and electromyography of the lower extremities recommended by Dr. Abraham as well as the water therapy treatment for so long as such expenses are for treatment which tends to effect a cure, provide relief or lessen the period of disability.
5. Plaintiff's request to change treating physicians is hereby granted. Dr. Abraham shall be plaintiff's treating physician at this time.
6. Defendant shall pay the costs due the Commission.
This the ___ day of September 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER